It's our first case in the morning, 4-18-0111. People of the state of Illinois, there's a vote on that. For the appellant, Mr. Costello, for the appellee. Yes, Your Honor. You may proceed. May it please the court, counsel, I'd like to clear up an egregious misstatement that, consequently, the appellee cited on page 10. It was said, I said, the court further claimed that it should have been made under duress, etc. But now it's improper. It should have been the defendant further claimed. For this, I apologize to the court. I do an abstract of every record, and somehow this was missed and proved. Anyway, and I don't believe I've made any other mistakes in the record. This case simply is, whether or not a statement of DOC, which is on page 82 of the record, which states to the defendant, you were denied IIP due to eight nature of offense. The defendant pled guilty to impact, well, pled guilty seeking impact, because there was a large argument between state defense counsel and court. As to whether or not the defendant was eligible for impact incarceration. Now, the defendant received, as the court knows, eight years at 85%, because he was not accepted at impact incarceration. The minimum sentence on aggravated discharge of a weapon, and he shot at two people, was four years. Now, I'm not saying he's going to get four years, but that was the range. He tied himself into eight years at 85%. Why? The defendant made an application, and I'll clear up one thing. He's not arguing this plea was not voluntary. The record is complete with it admonitioned by the court, and nor was raised in the post-conviction petition in effective assistance to counsel. It was thrown in the brief. The waiver is claimed by the state. Of course, the waiver is up to the court, but it's a weak read. The claim would be that the defense counsel told him to plead guilty and promised him impact incarceration. He never got the opportunity. Mr. Carsell, what does number eight dash nature of offense mean? It is not one of the prohibitions of applying for there are eight, and this is not number eight. It can't be. I believe number eight is the DOC prescription that the aggravated battery of the firearm is not going to be acceptable under DOC's regulations for the program. That's what it sounds like. You say you believe that. Do we know that? Is there a way to find that out? Well, we could have had a hearing, but the court could have said a hearing. We never had a chance. But it can only mean if he says that, and that's on page 82 of the record. I moved it. It can only mean that with a gun and shooting at anyone, I guess, that you do not get, you are not going to be admitted into DOC's impact incarceration according to the statute. Okay. Are you saying then this is a rule that has been adopted by the Department of Corrections? It has to be, Your Honor. Yes, it came out of the Department of Corrections, and we don't know that. There was a large argument between the judge, defense counsel, and the state. Defense counsel said, hey, he's not going to get impact incarceration because of the gun. He changed his mind and told the defendant, obviously, to take it, when the state's attorney argued that it's not one of the eight prohibitions of the statute. There are eight. And aggravated discharge of a weapon is not listed as a crime to prevent. So that's the statutory ineligibility. So what was it that the parties were talking about in the trial court and what the judge understood the agreement to be? It just simply was being represented that the offense for which he was pleading guilty to was not one of these offenses that would make him statutorily ineligible for impact incarceration. But was there a representation made beyond that, that DOC also did not have this particular offense as an automatic disqualifier? That was never discussed, Your Honor. The discussion was, is he going to be summarily denied impact incarceration? Well, if you don't know and it's your client, how's anybody in the courtroom supposed to know? How can it be ineffective? Or maybe he should have researched it further. But I'm over the age of 35. I'm born in the United States. I'm eligible to run for president. But after that eligibility, there are all kinds of barriers to me getting on the ballot. And a barrier can be an internal policy. Does DOC see the PSI? No. Could they? Well, they do. They get the full record. But what if, not with your client, but with any client, with any defendant, if they look at it and he's got tickets while he's in jail, he's had a prior offense unrelated to firearms, there could be any number of reasons they would say, we're not interested in wasting our resources on this guy, but he was still eligible. But, Your Honor, but, if there is a prohibition of DOC that's not contained in the statute of the eligibility and the defendant doesn't know it, the judge doesn't know it, so what does the judge do? And the benefit of the bargain goes not only to the state's attorney, but to the judge. He said, if in fact you are denied automatically, you come back and get a plea, vacate the plea. But he also has him sign that says, I've been recommended, but I may not be accepted. He understands that. But the prohibition of the benefit of the plea was, if he is denied summarily, therefore he gets to come back. The benefit of the bargain. And he didn't know, the judge didn't know, and the state's attorney didn't know of this denial based on an aggravated discharge of a weapon. And based on this record, we don't know either. Yes, we do, Your Honor. How? You were denied impact incarceration due to eight. Nature of the offense. The nature of the offense here is aggravated battery with a firearm. It cannot be any clearer, Your Honor, in my mind. But it could be clearer that there are other nature of the offense that they would say no. Oh, yes. Well. I mean, is it automatic as to this offense? Yes, Your Honor. They've got an internal policy that says, other than the statute, we've got an internal policy that defendants like this and this and this and this, we're just not going to let them in impact incarceration. Shouldn't, if it's not based on discretion, but it's automatic, and this is automatic, based on the nature of the offense. It's an automatic denial. Should you not, in fairness, allow the defendants who are fleeing and trying to get impact incarceration, the internal prohibitions that DOC has? I mean, you're blindsided with this. I'm not saying they don't have discretion to deny you on any basis, but if it's automatic, then we trigger the benefit of the bargain with the judge, and he gets to come back. He's got two options. One, he can get the benefit of the bargain. He can't, in this case, get impact incarceration or vacate the plea of guilt. And that's the case law on benefit of the bargain. Mr. Canstella, the question I'm going to ask, it may require information outside the record, and I'm not asking for that. I guess just simply what's contained in this record. It seems that, potentially, DOC has its own criteria that it applies, and maybe practitioners are unaware of those criteria, and that they have a listing of offenses, potentially, that make them, from an internal standpoint, the defendant's ineligible to receive impact incarceration. But potentially practitioners don't know about that, and they're operating in the blind when it comes to whether or not the defendant is going to get impact incarceration. In this case, is there anything that indicates that that is, in fact, what is occurring? In this case, Your Honor, it is an automatic denial. And that's just based on number eight, the way it says, nature of the offense. The defendant didn't get a hearing to read in advance to putting down what evidence DOC used to deny it. They can deny indiscretion, but in this specific case, the court said if it's an automatic denial, and he didn't refer to the eight factors in the statute, you come back and we vacate your plea. And there's been no prejudice. He could have fled to a standard, whatever, he could make a deal with the prosecutor on the minimum of four. Well, he got eight at 85%. I mean, he really was prejudiced by this failure of the trial court to state that this was an automatic denial. And I cannot read it any other way that it's not an automatic denial. It's the nature of the offense, and what was the offense that he put a guilty to? Aggravated discharge of a weapon. Apparently, with this case, DOC will not allow entry into their program with an aggravated discharge. If there was something particular about the manner in which this offense had been committed, take what Justice Knapp was asking, if the PSI was available, if there's something in the record that gives DOC some of the details of the offense, and DOC determined based on the description of what occurred, they were going to exercise their discretion in denying defendant impact incarceration. Would identifying the reason for their rejection of defendant as nature of the offense be descriptive? Could they have done exactly what I described and for the reason they rejected defendant just put nature of the offense? Well, if you're referring to nature of the offense, Your Honor, you can only refer to aggravated discharge of a firearm. They say nature of the offense, there's only one offense he put guilty to, aggravated discharge. Now, I don't know if the record goes up to it. Certain documents go up to it. There wasn't any PS pre-sentence report in this case. He pled, he did it. But I would feel strictly it is apparent that if you conclude that this is an automatic reversal due to the nature of the offense, that means the nature of the offense of an aggravated discharge of a weapon is precluding entry into DOC under the impact program, the defendant is entitled to go back to the trial court because the trial court said if it's an automatic discharge and didn't refer to the statute delineating the qualification, then it has to be upheld. The bench was a bargain. He didn't get it, and he should have been able to come back and vacate the plea. That's the argument of the defendant in a nutshell. I can't think of the case of Sir Walter Raleigh. He was convicted and beheaded on the basis of a letter of no complication. In this case, you've got a hidden agenda of DOC that you don't know. Although we do know now, at least for an aggravated discharge of a felony, every counsel should be on notice that you can't get DOC impact consideration. With the court's comments as it's hearing the recitation of the plea agreement, and he's directing these comments to the defendant, do you understand that I do not control the Department of Corrections? It's solely up to them whether you get in or not. And the defendant indicated he understood. Absolutely. Again, the court says you understand that I can make the recommendation, but it's completely up to the Department of Corrections. At that point, the defendant, he's not given any assurance that he's getting in. Yes, he is. He is given an assurance that if it's an automatic denial, he gets to replease or try the case. That's what the court told him. And I'm not faulting the court. The court just has misinterpreted the fact of an automatic denial, and that's what this is, an automatic denial. I see my time is over. Is the court having any further questions? Seeing none. Thank you. Thank you. Thank you. May it please the Court, good morning, Your Honors, Counsel. My name is Benjamin Sardino, representing the Fourth District State Appellate Prosecutor's Office in this case. I'm just going to quickly address some of the points that the State raised in its brief, and, of course, any questions that the panel might have directly on those questions. First, the trial court didn't err in dismissing Defendant's post-conviction petition because he didn't state it just in a constitutional way. And because Defendant essentially argues in two facets, although I guess he's embedded in the second one regarding the voluntariness of this plea, I guess the first part, that he was promised impact incarceration by the trial court and that, therefore, the State had some kind of bargain where he was promised that he would receive impact incarceration or that he somehow promised that he would have a chance to get impact incarceration based on DOC's discretion. I think that based on the argument, I think it's the second one, the brief was kind of a little unclear as to what the exact argument was, and I'll take it that what Defendant's argument based on his little argument is is that DOC somehow automatically denied him based on an internal policy that somehow strikes people with this offense. And under that argument, Defendant has not stated it just in a constitutional claim in any way, shape, or form based on the argument that he was given, not given the benefit of the bargain in this case. The State promised Defendant a recommendation to DOC for impact incarceration, a trial court agreed to recommend it. And to Justice Harris' question about something that's outside the record, I can discuss at least what I discussed with DOC and how that kind of applies on what the State's side of running their administrative guidelines to further confirm what the State's argument is on the administrative guidelines, which we cite on page 89 of our brief, which is that when DOC receives a case in this fashion, they don't even look over whether or not Defendant is statutorily eligible for the program. They assume that the trial court says that the crime that Defendant was convicted of does not disqualify him, because it's kind of... Eligibility factors is a little weird, because really what the statute does is enlist eight or nine sections of crimes for which Defendant cannot receive impact incarceration. And those are listed at the end of our brief. There are things like Class X felonies, arson cases, rape cases, that kind of thing. That DOC, when they receive that request for impact incarceration, they don't even look at whether or not that crime meets the definition of the statute for whether or not it's eligible. They proceed to their own process. And this is a program with a number of limited slots and a bunch of evaluation procedures that DOC uses to figure out whether or not someone should be entered into this very limited program. And one of those things is when someone's committed a violent offense, it's usually a negative when it comes to the evaluation of whether or not someone should receive one of these limited slots. Here, Defendant was convicted of unlawful destruction of firearms to people. That poses a security risk to other people in the impact incarceration. And that's what the state cited, and that's a perfectly legitimate and reasonable interpretation of what DOC's evaluated criteria is and what it says in the letter, which is that the nature of the offense is disqualified. Well, is there discretion being exercised in that circumstance? In other words, with this offense, is DOC able to say, well, even though it is this offense that we generally would reject for boot camp, in this case we're going to accept the individual for boot camp. Your Honor, my understanding based on information that I obviously can't let you rely on because it's outside the record is that there is, but the fact remains that the problem is Well, we don't know that. We don't know that, but the problem with that argument is that if the defendant is now somehow shifting the burden on this court or the state to somehow prove discretion is being exercised, what is the defendant's obligation at the post-conviction stage? Well, in all fairness, I read to Mr. Costello some of the court's questions to the defendant. A little bit later, the court says, my belief is then based upon what the parties are telling me, if the Department of Corrections were to tell us it was an automatic denial, then we would come back to square one and set this plea aside. And the prosecutor says, I would not object. Yes. So we get then to the words automatic denial. If DOC considers this offense to be something that results in an automatic denial, why wouldn't the plea then be set aside? Two reasons. Well, two reasons specifically to the burden that the defendant has to show before this court to get this reversed. It's the defendant's obligation when he files a post-conviction petition to attach affidavits and exhibits that prove the claim that he's saying. The defendant is now alleging in his brief and argument that there is a DOC policy of automatically excluding people who are predicted of a violent offense or an aggravated firearms offense, or I'm not even sure if it's a DOC policy. Well, is there? Your Honor, as to my knowledge, there isn't a DOC policy. Well, if it's a rule promulgated by the Department of Corrections, why couldn't this court look it up? I mean, a rule is the same thing as a law, isn't it? Same thing as statutory law. It is, Your Honor. It should be available to us. And the state's investigation of the administrative guidelines, one of the things that we cite, well, we don't cite what Your Honor's question was specifically, but when I was examining at least the administrative guidelines, I did not see a direct policy that specifically stated that aggravated firearms offenses are automatic disqualifications, or violent offenses are automatic disqualifications, or anyone with the name Waylon Maddox is not eligible for consideration for direct incarceration. And all this goes down to the fundamental question that the defendant is kind of obscuring in this. What's his burden to show for this court to get a reversal of this denial? And the fact remains is that the initial petition, which is his obligation to draft and attach exhibits to, is to prove that DOC has some kind of policy that was implicated, that was then agreed to by the state, that if that policy somehow existed, that would automatically result in reversal back to the community. Well, what you were describing earlier, in terms of how you understood DOC to operate, sounds suspiciously like a policy, where you have someone performing a ministerial act of going through and identifying what the offense is, and if on its criteria it would result in automatic denial of the individual for impact incarceration. That's not an exercise of discretion, then. That's a policy. And it seems to me that that's then putting practitioners in the dark when they're trying to engage in plea discussions like this as to whether or not the individual is going to be eligible. Your Honor, I don't think I agree with that synthesis of the issue, because you have to understand this program is a very limited program with a number of limited slots. There are a number of applications, and I apologize if I notice I haven't provided statistics about this, but my understanding is that compared to the amount of people that are trying to get into this program versus the number of slots in the program, it's an inordinate number of people trying to get into a very limited program. So if one year, for example, say, there was a much less limited category, I imagine less group of people trying to get in and somehow a violent offender could be admitted in, and DOC thought that that was a prudent measure, then yeah, I imagine DOC would have to look at that case and admit them. But I don't think that it's not an exercise of discretion to look at a very large pool of candidates and say, based on our synthesis, which is something that is, by the way, specifically allowed within the statute, which is to look at a crime and figure out and say, does that crime mean that that person poses a security risk to other prisoners in this program? Because that is one of the considerations that DOC is required by law to look at, to say that violent criminals shouldn't be admitted in cases where there are more violent criminals than there are slots in the program, and there are nonviolent criminals that we could admit. Well, I agree with you that the record isn't such that we can make this determination. But if it was such that we were able to see that you have a clerk in DOC saying, defendant X was convicted of this offense, and on our list of disqualifying offenses I see that same offense, and there's no discretion being exercised there, wasn't that then an automatic denial of the type that the trial court is referring to in this case? I kind of want to branch off on one point, which is I think that that synthesis also kind of mangles the benefit of the bargain aspect. I'm just asking, in that specific scenario, would that constitute an automatic denial? I think that based on what the trial court was attempting to say, it wouldn't be an automatic denial. Because what that would mean is that DOC has made a determination that based on the statutorily required element, which is security for other prisoners, that these criminals should not be admitted to the program. But now that you've postulated that hypothetical, let me point out all the differences between that hypothetical and what the petition says. The petition says there is this thing in a letter that says, number eight, nature of the offense. Defendant admits that they have no idea what that means. And that concludes that because the defendant has no idea what that means, it must mean this thing, which is that he was automatically disqualified. He hasn't alleged that there is a policy in this petition. He hasn't made any kind of proof that DOC has this policy. He hasn't articulated why that policy, attached to any exhibits, that proof policy exists or that it would exercise even in this case, or anything beyond just simply attaching a letter and then making a claim and then basically retracting that claim before this court by saying, we have no idea if my claim is correct or not. I'm simply reading the plain text of this letter and saying that that must be the case. And the fact remains that that is a complete application of the burden that he has upon proving for this court that the trial holds. Well, if it's a policy or a rule, could this court take judicial notice of it, even though it's not mentioned or established in the briefs? If it's law and policy, why can't we look at it? Why can't this court take judicial notice of it? It absolutely could. But, again, the state's investigation of the… Well, then following up on what Justice Harris said, if the court said, if DOC tells us it was an automatic denial, then we're coming back to square one. So it sounds like to me if it was an automatic denial, then admonition was wrong. I don't know if it's the benefit of the bargain, but I have a hard time believing that this defendant wasn't under the impression that he had a chance to get boot camp. And if it's automatic and he had no chance, something just doesn't seem right about that, at least from my standpoint. Well, Your Honor, it definitely isn't the benefit of the bargain under the sentences that you're alleging. If it's simply the trial court saying offhand, oh, well, it's an automatic denial, we'll come back, because then the state can promise him something that we have to be bound by to provide him in order to do something guilty. So I guess under the hypothetical that it's simply the trial court statement, that's a whole other issue that'd have to be a different theory of law beyond benefit of the bargain. So the state wouldn't be concerned then that this person entered into this plea believing, based upon what was represented by the attorneys in the courtroom and the judge, that he had a chance for boot camp but really didn't? It's not problematic from the state's standpoint. I mean, you're not just an advocate for one side being the prosecutorial side, but for fairness and equality, and that doesn't seem very fair to me. I am, Your Honor. If the defendant had proved any of that, then this would be a completely different argument, and I might have conceded that in the brief. But the fact remains that nothing in the record shows any of that. Nothing in the petition shows any of that. And the defendant doesn't even allege any of that in the petition. This court can't even take as part of a first-stage assumption that there is a policy, because the defendant hasn't alleged a policy. The defendant simply says that there is a letter that makes it seem like something, and we don't know what that is. And to take that leap from there to saying that there is a policy, and it was employed in this case, and he definitely didn't have a chance to get impact incarceration, is a leap and a bow beyond what the post-conviction state is supposed to work in the first stage? Would you say that it would be, based on your experience, would it be possible for a defense attorney to discover that DOC views violence, any form of violence in an offense that is not otherwise disqualified, that they would view that, and I think your earlier phrase, they view that as a negative, could a defense attorney discover that? Yes, Your Honor, because I... By looking at what is available on the public record, i.e. rules, regulations, stated policy. Well, Your Honor, we said in our brief the fact that the DOC is required by law to evaluate whether or not a prisoner poses a safety risk to other prisoners. And I don't know if that means that an offense, that when DOC looks at a particular offense or a particular offender or a particular set of facts, what process that entails to the point where they would say a certain offense is automatically disqualifying or a certain kind of person is, not person, I apologize, a certain kind of fact pattern is disqualifying or if any of those policies exist. But I think that kind of underlines the whole problem with this case, which is that none of these things are alleged. I understand, I understand. I'm thinking about... Trial judges have a sufficient number of burdens that are placed upon them in terms of what they have to advise defendants of when they're pleading guilty. But the question becomes, if defense attorneys could know and begin to understand that this is a negative, is that part of the advice or at least a notation you tell your client or perhaps that the court tells the client? Instead of saying automatically, you've got to understand, I just recommend it. Based upon the offense, you might be viewed negatively by the Department of Corrections. Do you still want to... And I'm not saying that the judge go and research that, but should that be an obligation of the defense attorney if he thinks he's getting a bargain for his client to tell the client that this is going to be iffy? You've got a chance, you're eligible, but it's going to be iffy. Yes, Your Honor. And I think that if the defendant had postulated in his petition something like, well, my defense attorney told me that there was like a 99% chance that I was absolutely going to be accepted for this program. And he didn't tell me that there was a really big concern that DOC has with violent offenders. And that induced me to plead guilty because he basically told me there was like zero chance I was going to be denied. That would be a very different case from the one we have here where there's simply a claim, there's not even a claim, I mean, there's an inverse claim that I guess, I don't know if the defendant abandoned this argument, that somehow his counsel told him that he was absolutely, he promised him that he was going to get back to incarceration. That's kind of what occurred through the brief as well. That's obviously countermanded by the majority of the record where everyone's in agreement prior and during the sentencing hearing that this was a recommendation and he obviously had discretion and the defendant signed a paperwork to that effect. And this was all at the discretion of DOC to do that. So, if the court has no further questions on that, I will just personally examine the effectiveness claim attached. Defendant raises his argument about the effectiveness of this system of counsel and admits that he has publicly waived it by not including it in his post-conviction petition. The Supreme Court has made it clear that this court does not have supervisory authority to reverse or to ignore a forfeiture based on failing to include something in the post-conviction petition. This is well-settled law. Even if the court wanted to evaluate, given the right claim, the idea, again, that his counsel somehow was ineffective by telling him that he was going to receive a path to incarceration, was clearly abutted by defendant signing waiver statements and such, and that he was told at multiple stages that this was a discretionary program. And finally, that somehow trial counsel was ineffective for telling him that he was eligible under the requirements is clearly not established by the record because the advice that he was eligible would not have been unreasonable because the crime that he was convicted of is not listed amongst the statutory requirements that are listed in the statute, which are disqualifying offenses of class X felonies, first or second degree murder, armed violence, aggravated kidnapping, criminal sexual assault, forcible detention, and arson. So the idea that that recommendation, based on the statute, was somehow unreasonable is aptly contradicted by the statute itself. I just want to clear up two factual things that the defendant raised. Defendant kind of claims that there was somehow a big disagreement at the end of the hearing about whether or not he was statutorily eligible. That's not what the transcript bears out. I think defense counsel was exercising the abundance of caution in clarifying that everyone was clear that he was eligible under the statute for consideration by DOC, and I don't think that penalizing trial attorneys for making things appear on the record is something that this court would want to kind of advance forward. And I also wanted to make one point, which is that the defendant was convicted or pled guilty to the first count of defense, but he also had a second count dismissed with it, which would be a lawful possession of his own case. So it's not like he didn't receive some kind of benefit from having pled guilty, because there was a second count, obviously, with it included. Before you run out of time, as I understand, the defendant was represented by counsel throughout these post-conviction proceedings. Is that right? Yes, Your Honor. Okay. It seems that... Counsel before this court, actually. Yeah. Excuse me? Counsel before this court, actually. Okay, great. The State and the defendant seem to disagree on what the trial court did here. Was this a dismissal? Was this a denial? Was it a first stage? Was it a second stage? Was it a third stage? But it appears in your position it was considered to be a first-stage dismissal. Is that accurate? That was my understanding, Your Honor. If I'm wrong about that, then I apologize. Well, I'm not sure what happened here. The court normally would dismiss it if it felt that it didn't state the gist of the constitutional claim. That didn't happen. The court set it for a hearing. It doesn't appear to be a second stage, because there was no motion to dismiss file. And then at the third stage, which if that's where we are... Go ahead. It wouldn't have been a third stage, because there was no evidentiary hearing on the issue. So, Your Honor, I might have been incorrect about arguing that it was a first stage. I think you argued it was a second stage, but I'm getting a little mixed up. Your Honor, I have a brief report, and I believe I said it was a first stage. Oh, okay. But the State participated, didn't they? Yes, Your Honor. So if they participated, it can't be a first stage. Right. I'm looking over the defendant's brief report just to see if he says that it's a second stage. I guess the only... Sorry, Your Honor, I think my time is up. Well, I'd like to... Well, it's up to Justice Kavanaugh. Go ahead. Just finish this so we can be clear on what we're doing here. So, Your Honor, I apologize to this court if I somehow got wrong and it was a second stage and not a first stage. I think you said it was a first stage, and the defendant said it was a second stage. The only difference then would be, Your Honor, I'm not sure what the procedure, and this is my ignorance, would be if they proceeded like it was a second stage at the first stage and had argument on it. If it was a second stage, then even though defendants... I don't think that would change any of the analysis from the court in terms of how it would evaluate any of the evidence. But it's my apologies to the court if I misinterpreted that argument. I'm not even saying you did. I do note that the court ruled that, said that I deny the motion. And there's a difference between a denial and a dismissal. But, anyway, thanks for... Thank you, counsel. Okay, Your Honor. I apologize for those things. Rebuttal? Yes, Your Honor. First, counsel has stated that this wasn't a constitutional issue. On the third page, four of our briefs recite that Boylan v. Alabama and Santiago v. New York have told that the benefit of the bargain is a constitutional issue. Therefore, the post-conviction pleading should not be dismissed as a failure of stating a constitutional issue. Second, this was the second stage of the post-conviction act. The court is supposed to direct the state to file a petition if he grants a second stage. No petition was ever filed by the state. The court went into an immediate argument, and apparently, he was letting the state argue, and it almost was a second stage without a hearing. The counsel keeps alluding to the fact that the defendant has not produced this or not produced that. How can he if he doesn't get a hearing? He had no opportunity to probe DOC and determine, as we're all asking, what is this? Well, the court had scheduled it for some kind of a hearing. Were you precluded from going forward with the type of evidence you just discussed? It was only on argument, Your Honor. Say that again. It was only on argument, I believe. No subpoenas were issued. We weren't set for an evidentiary hearing or anything else. Well, how did this, quote, number eight-dash nature of offense, end quote, get into evidence? When the defendant, when counsel, and I'm waiving it. It is waived. In effect, it sits in the counsel. Be clear on that. I'm not raising hands. Counsel for a defendant says, you can't get DOC impact with this charge. State says, yes, you can. And the state argues the eight points in the statute that says this is what, either qualifications or disqualifications. Counsel then agrees, lets the defendant plead. But the court does say, well, there was no evidence presented except that the affidavit, not the affidavit. There's no evidence presented that the defendant could present subpoena DOC or what have you. It gets down to the issue, not his. He didn't do this, he didn't do that. We have a pleading that says denial because of, and it has to be, the aggravated discharge of a fine. Automatic. Now, if counsel should have looked it up, fine, you should know what they're going to give and not give. But in this case, specifically, the court said, if it's an automatic denial, you come back in and we'll take away your plea. And you can do what you want. And I, it's only, we're all speculating that would have been solved by a hearing. But that's our argument, Your Honor, that he didn't get the benefit of the bargain because the state's attorney said, agreed to this. And that's the benefit of the bargain. And the court said, the court left the wall through it. The only criticism of the court is that he misinterpreted the subpoena, not the automatic denial. Thank you. Thank you, counsel. We'll take the matter under advice.